## McCormick's Administrator *versus* Irwin.

35 111
188 532
35 111
193 419

A surety in an original obligation who has paid the debt, is entitled to be subrogated to the rights of the creditor, not only as against the principal, but also as against a subsequent surety for the principal.

The doctrine of subrogation does not depend on privity, nor is it confined to cases of strict suretyship; it is a mode which equity adopts to compel the ultimate discharge of the debt by him who, in good conscience, ought to pay it; and to relieve him whom none but the creditor could ask to pay.

Actual payment discharges a bond or judgment at law, but not in equity, if justice require the parties in interest to be restrained from alleging it, or insisting on their legal rights.

A party who attends and cross-examines witnesses, on a short rule to take depositions, waives all objections to the sufficiency of the notice.

This court cannot consider an objection to a deposition, that the witnesses examined were not *going* witnesses, as specified in the rule. That is a matter for the control of the court below.

The *admissibility* in evidence of the exemplification of a record, depends upon the prothonotary's certificate.

ERROR to the District Court of *Philadelphia*.

This was an action of debt by William Smythe, Jr., administrator, with the will annexed, of Benjamin Pyle, deceased, for the use of Ellis P. Irwin, against Samuel McCormick, upon the following bond:—

"Know all men by these presents, that we, F. A. Whittaker, of Wilmington, in the state of Delaware, Samuel McCormick, in the county of Clinton, and Joseph Whittaker, of the state of ———, are held and firmly bound unto William Smythe, Jr., administrator *cum testamento annexo* of the estate of Benjamin Pyle, deceased, in the sum of $6000, to be paid to the said William Smythe, Jr., or his certain attorney, executors, administrators, or assigns: to which payment well and truly to be made, we bind ourselves, and every one of us, by himself, for and in the whole, our heirs, executors, and administrators, and every of us, firmly by these presents. Sealed with our seals, and dated the 15th day of March, A. D. one thousand eight hundred and forty-eight.

"Whereas, the said William Smythe, Jr., as administrator aforesaid, did, on the 15th day of February 1848, present to the Court of Common Pleas of Clinton county, sitting in equity, his bill or petition, praying the said court, *inter alia*, to grant an injunction to the said F. A. Whittaker, and to appoint a receiver, &c., as per said bill. And whereas, the sole object of the said orator, William Smythe, Jr., in presenting said bill and praying said injunction, is to obtain a just settlement, and to secure the amount which shall be finally ascertained to be due. And whereas, the said F. A. Whittaker, although he denies the power of the court under all the circumstances of the case, to award the said injunc-

tion, and appoint a receiver, agreeably to the prayer of said bill, is, nevertheless, willing to give reasonable security, on condition that the said application for a receiver be not persisted in.

" Now, the condition of this obligation is such, that if the above bounden F. A. Whittaker, his executors or administrators, shall and do well and truly pay, or cause to be paid to the said Wm. Smythe, Jr., administrator as aforesaid, his executors, administrators, or assigns, all and whatever sum and sums of money may hereafter be ascertained and determined to be due to the estate of the said Benjamin Pyle, deceased, or to him the said Wm. Smythe, Jr., administrator as aforesaid, from him the said F. A. Whittaker, by reason of his contracts and connection with the Washington Iron Works, or otherwise, as fully, to every intent and purpose, as though a writ of injunction had issued, and a. receiver had been appointed, then this obligation to be void, or else to be and remain in full force and virtue.

" Witness to the signature of  
F. A. Whittaker,  }  F. A. WHITTAKER.   [L. S.]  
  "BENJAMIN F. MILLER.  }

" Witness to the signature of  
Saml. McCormick,  }  SAML. MCCORMICK.   [L. S.]  
  "BENJAMIN F. MILLER.  }

" Witness to the signature of  
Joseph Whittaker,  }  JOS. WHITTAKER."   [L. S.]  
  "J. H. JONES.  }

The defendant died during the progress of the suit, and his administrator, who resided in Clinton county, was substituted on two returns of *nihil* against him.

Before and during a part of the year 1840, the Washington Iron Works, in Clinton county, were carried on by the firm of E. P. Irwin & Co., composed of William Pennock, Benjamin Pyle (who together were interested to the extent of one-third of the partnership property and profits), William C. Irwin, George W. Irwin, and Ellis P. Irwin (who together held the remaining two-thirds).

Pyle subsequently purchased the interest of Pennock, and Ellis P. Irwin purchased the interest of his brothers, William C. and George W. Irwin; and these two, Ellis P. Irwin and Benjamin Pyle, formed a new copartnership as Irwin, Pyle & Co.; the former owning two-thirds, and the latter one-third of the partnership property.

Benjamin Pyle died in the latter part of 1845, and whilst the furnace was in blast. The administrator desiring that Pyle's interest in the business should remain as at the time of his decease, and for the benefit of his estate, the works were carried on as before, until Ellis P. Irwin agreed to sell one-half of his interest (or one-third of the whole), to Whittaker, Garret &

Hughes; who soon after relinquished their right, in order that it might be transferred by him to Francis A. Whittaker.

At or about the same time, Whittaker purchased from Irwin the remaining half of his interest, and two articles of agreement were entered into, on the 14th April 1846, transferring those interests to Whittaker, subject to the partnership debts and engagements; and with the acquiescence of Pyle's administrator.

Under these agreements, Whittaker went into possession, and carried on the business for nearly two years, in connection with Pyle's administrator, for the benefit of himself and Pyle's estate.

In February 1848, Mr. Smythe became dissatisfied, and filed a bill in equity in the Court of Common Pleas of Clinton county, wherein the members of the former firm of E. P. Irwin & Co., and Francis A. Whittaker, were made defendants, praying for an injunction, and the appointment of a receiver, &c. And Whittaker, for the purpose of avoiding an injunction and receiver, and of retaining possession and control of the property, gave the bond on which this suit was brought, with Samuel McCormick and Joseph Whittaker as sureties.

On the 18th February 1851, the Court of Common Pleas of Clinton county made a decree in that suit, in favour of the complainant therein, for $4000; one-half of which was promptly paid by Joseph Whittaker, and Ellis P. Irwin was compelled by execution to pay the remainder; Francis A. Whittaker having disposed of the property, and left the works. And to reimburse himself for the amount so paid, he brought this action against McCormick, the other surety in the bond.

On the trial, the plaintiff offered in evidence the deposition of Benjamin F. Miller, taken on ten hours' notice, under a rule of court, as a going witness. To this the defendant objected, that the notice was insufficient, and that Miller was not a going witness. It appearing that the defendant's counsel had attended before the commissioner, and cross-examined the witness (under protest), the court overruled the objection, and sealed a bill of exceptions.

The plaintiff also offered in evidence an exemplification of the record of the equity suit in Clinton county, which was certified by the prothonotary to contain " a full, entire, and attested copy of the whole record," so full and entire as the same remained of record in his office. To this the defendant objected, that it was not the entire record, and so appeared from inspection; inasmuch as there was no copy of the bill, answer, or master's report. The court overruled the objection, and the defendant excepted. There were also other exceptions to evidence, not necessary here to be specially noted.

The defendant's counsel presented the following points in writing, upon which they requested the court to charge the jury:—

[McCormick's Administrator *v.* Irwin.]

1. That it appearing in the plaintiff's *narr.* that $2000 of the decree of the Court of Common Pleas of Clinton county, No. 80, February Term 1848, was paid to the plaintiff, William Smythe, Jr., administrator, &c.; and it appearing, from the testimony of the said Smythe, which is uncontradicted, that he was paid in full the amount of said judgment; under the *pleadings* in this case, the present action cannot be sustained against Samuel McCormick, the bail in said cause.

2. That the said McCormick, the defendant, was as much the surety of said Ellis P. Irwin, to whose use this suit is brought, as he was that of any other of the respondents in the bill in equity, already in evidence, or by the terms of the bond on which this action is founded; and if the jury believe that the whole of the money decreed, was paid to the original plaintiff in said bill, William Smythe, Jr.; under the pleadings and evidence, the present action cannot be sustained.

3. That by the terms of the two articles of agreement signed by Ellis P. Irwin and F. A. Whittaker, of the 14th of April 1846, and given in evidence by the plaintiffs, they are executory, and until he shows that he has complied with the terms of said articles of agreement, and done all that he covenanted and agreed to perform, he has shown no equity which would entitle him to be subrogated to the legal rights asserted by William Smythe, Jr., administrator of Benjamin Pyle, deceased.

4. That the original bill in equity, filed in Clinton county of February Term 1848, No. 80, not having been produced to the court, nor the answer filed in that case, there is no evidence before the court and jury to show that this is a debt which F. A. Whittaker agreed to pay by those contracts.

5. That before the said Ellis P. Irwin can claim the right of subrogation in this action, he must show that he has complied with all things stipulated on his part to be done and performed in said contracts of the 14th of April 1848, and that the said F. A. Whittaker has failed to comply with his part of the terms of said contracts.

6. That there is no evidence in this case as to what was the real cause of action in said bill; and if it was merely on account of the interest which said Pyle held as a partner with said Ellis P. Irwin, then it would not be a debt which said Whittaker agreed to pay by said articles of agreement, and there could be no subrogation of said E. P. Irwin to the legal rights of said William Smythe as the administrator of Pyle: such being the case, the plaintiff cannot now recover.

7. That James T. Hale and H. N. McAllister, the attorneys at law of William Smythe, Jr., administrator of B. Pyle, deceased, had no power or authority to transfer this bond to Ellis P. Irwin, by the agreement alleged to have been made at Harris-

[McCormick's Administrator *v.* Irwin.]

burg, and such alleged agreement gave no right to institute this action in the name of Smythe, to the use of Ellis P. Irwin.

8. That, should the jury find for the plaintiff, the defendant is entitled to a credit for the amount of the proceeds of the sheriff's sale under said decree, made after the giving of the note by Irwin, of the 31st of May 1852, which amounts to more than $900.

9. That Samuel McCormick, the present defendant, being a surety, by the terms of the bond, for all the defendants in the bill in equity, prosecuted against Ellis P. Irwin, as well as the seven other respondents in said bill, he has a higher equity than the party to whose use this suit is brought, under the facts disclosed before the court and jury, and therefore the present action cannot be sustained.

10. That, in any view which may be taken of the case, under the pleadings and evidence before the court and jury, until the amount of debts ascertained between Whittaker and Irwin, and the claim asserted by Smythe, administrator of Pyle, is shown to be one which was due by Ellis P. Irwin and others, when the sale was made to Whittaker under the contracts of the 14th April 1846, this action cannot be maintained.

11. That the mere agreement between F. A. Whittaker and Ellis P. Irwin, that said Whittaker should pay certain debts of the firm of Ellis P. Irwin & Co., which were then existing, did not make said Irwin a surety for said Whittaker, nor did it give said Irwin a higher equity than one who had become bail for said Irwin as well as said Whittaker, to an original creditor of said Irwin & Co., for a pre-existing debt, nor does it give him an authority to be subrogated to the rights of such creditor who had been paid by those who originally contracted the debt.

12. That, until the partnership accounts between Ellis P. Irwin, Whittaker and Pyle, are shown to be settled, there could not be such a subrogation as is claimed in this action.

13. That, under the whole pleadings and evidence in the cause, the verdict of the jury should be in favour of the defendant.

The court below instructed the jury as follows:—

"By the decree in equity all the defendants became answerable for the debt to the complainant. One question for the jury, under the evidence in the cause, is, whether as between themselves it ought to be borne primarily by Whittaker; for, if so, then if Irwin came forward and paid it, he might use the decree as a means of indemnity, of obtaining indemnity from Whittaker. Unless Irwin had this right, and might have had the judgment for his use, the bargain with the plaintiff about the bond was of no importance, and would give him no right against either Whittaker or the defendant; and the only influence which this contract can have upon the case is to rebut the presumption that Irwin meant to extin-

[McCormick's Administrator *v*. Irwin.]

guish the debt by paying it, if Irwin intended to use the decree, or the bond given anterior to it, as a means of recovery against McCormick.

"In general, when a surety intervenes for the purpose of obtaining time for the principal, a prior surety will have the same rights against him as against the principal. Had McCormick not intervened, the partnership property would probably have been placed in the hands of a receiver, and have thus satisfied the debt.

"If McCormick intervened at the request and for the benefit of Whittaker, and to the injury of the other defendants, he would stand in the light of a security for Whittaker, and they would have the same rights against him as against Whittaker.

"I reserve all the points submitted by the defendant's counsel but the eighth, and decline to charge as therein requested."

In answer to the eighth point, the court said, "An execution issued on the decree at the instance of Irwin. If the money made under that execution was made out of the sale of the property of Whittaker, the defendant would be entitled to a credit for it. On the other hand, if the property was Irwin's, and sold to make title, then the defendant would not be entitled to a credit. If the property belonged jointly to Irwin and Whittaker, the question is more difficult, and will depend on the share or proportion owned by Irwin. If this was the property held by the firm, and sold by the Irwins to Whittaker, and Whittaker did not pay for it, then to the extent of his default it would remain theirs, and he would not be entitled to a credit for it as his."

To this charge the defendant excepted; and a verdict having been rendered for the plaintiff for $3106.24, and the court *in banc* having entered judgment for the plaintiff on the points reserved, the defendant removed the cause to this court, and here assigned for error: 1. The substitution of McCormick's administrator, without the service of process upon him. 2. The admission of Miller's deposition. 3. The admission of the exemplification, of the record from Clinton county. 4. The charge of the court. 5. The judgment on the points reserved.

*Parsons*, for the plaintiff in error, cited Mehaffy *v*. Share, 2 *Penn. R.* 379; Sterling *v*. Brightbill, 5 *Watts* 229; Dorr *v*. Shaw, 4 *Johns. Ch.* 17; Armstrong's Appeal, 5 *W. & S.* 352; Coates's Appeal, 7 *Id.* 99; Warren *v*. Sennett, 4 *Barr* 117; Lloyd *v*. Galbraith, 8 *Casey* 110; Singizer's Appeal, 4 *Id.* 524; Himes *v*. Keller, 3 *W. & S.* 404; Kyner *v*. Kyner, 6 *Watts* 221; Bank *v*. Potius, 10 *Id.* 148; Fink *v*. Mehaffy, 8 *Id.* 384; Baily *v*. Brownfield, 8 *Harris* 41.

*W. S. Price* and *Wollaston*, for the defendant in error, cited

Van Scoter v. Lefferts, 11 *Barb. S. C.* 140; Peyton v. Lewis, 12 *B. Monr.* 356; Beckley v. Munson, 22 *Conn.* 299; Hobart v. Howard, 9 *Mass.* 304; Cottrell's Appeal, 11 *Harris* 294; Rittenhouse v. Levering, 6 *W. & S.* 190; Burns v. Huntingdon Bank, 1 *Penn. R.* 395; Pott v. Nathans, 1 *W. & S.* 155; Armstrong's Appeal, 5 *Id.* 356.

The opinion of the court was delivered by

STRONG, J.—The familiar doctrine of subrogation is, that when one has been compelled to pay a debt which ought to have been paid by another, he is entitled to a cession of all the remedies which the creditor possessed against that other. To the creditor, both may have been equally liable, but if, as between themselves, there is a superior obligation resting on one to pay the debt, the other, after paying it, may use the creditor's security to obtain reimbursement. The reason why subrogation is not allowed to one partner as against his copartner, or to one merely a joint debtor as against his co-debtor, is because that, as between them, there is no obligation to pay the debt resting upon one, superior to that which rests upon the other. The doctrine does not depend upon privity, nor is it confined to cases of strict suretyship. It is a mode which equity adopts to compel the ultimate discharge of the debt by him who in good conscience ought to pay it, and to relieve him whom none but the creditor could ask to pay. To effect this, the latter is allowed to take the place of the creditor, and make use of all the creditor's securities, as if they were his own.

In the light of these principles, we discover no error in the charge of the court below. It was a substantial answer to all the points propounded by the plaintiff in error, which arose out of the cause, and it was correct. Smythe, it is true, obtained his decree against both Irwin and Whittaker, but the agreements between them, given in evidence, established, that long before the decree, as between them, the primary or superior obligation to pay the sum decreed, lay upon the latter. He had covenanted with Irwin to pay it, and the effect of the covenant was to make himself the principal. Of course Irwin, after having paid the debt, became entitled in equity to the use of Smythe's decree, obtained against the principal, and not only to that, but to every remedy to enforce its payment which Smythe had against Whittaker's sureties, who became such after he assumed the superior obligation to pay.

The case of Burns v. The Huntingdon Bank, 1 *Penn. R.* 395, rules that a surety in an original obligation, who has paid the debt, is entitled to a cession, not only of the creditor's judgment against the principal, but also of his claim against a subsequent surety of the principal for a stay of execution. A similar decision was made in Pott v. Nathans, 1 *W. & S.* 155. There the creditor

[McCormick's Administrator *v.* Irwin.]

took a promissory note as a collateral security for the payment of a judgment which he had obtained against a principal debtor. The original surety, having paid the judgment, was subrogated to the right of the creditor to the note. That was subrogation between sureties, for the drawees of the note were but sureties, but they were junior. The equities of such sureties are not equal.

Apply now these principles to the present case. McCormick was a surety, it is true; his obligation was secondary to that of Whittaker, so was Irwin's. Though an equal debtor to Smythe, as between him and Whittaker, the latter was bound to pay the whole debt, and this was the extent of his obligation, before McCormick became surety at all. The expressed purpose of McCormick's bond was to relieve the property in Whittaker's hands, which might, without it, have passed into the hands of a receiver, and been applied in payment of the debt due to Smythe, and thus in discharge of Irwin. The bond was given to enable Whittaker the principal debtor to retain possession. But, as was said in Pott *v.* Nathans, by SERGEANT, J., " it is sufficient that it is settled, that if the interposition of the second surety may have been the means of involving the first in the ultimate liability to pay, the equity of the first surety decidedly preponderates." When therefore it was established, as we think it was by the agreements, that as between Irwin and Whittaker, the latter was bound to pay Smythe, it followed, of course, that the former, having paid it, was entitled to subrogation to Smythe's claim against McCormick. Irwin and Whittaker were neither partners, nor equal joint debtors. We need hardly add that the bond itself shows that the suretyship assumed by McCormick was for Whittaker alone.

The other points require but a passing notice. Actual payment, indeed, discharges a bond or a judgment at law, but not in equity, if justice require the parties in interest to be restrained from alleging it, or insisting on their legal rights: Fleming *v.* Beaver, 2 *Rawle* 128. Whether there was such an equity in this case, depended upon the question whether the primary obligation to pay was upon Whittaker. Certainly the court could not have said that payment by Irwin sustained the defendant's plea, and discharged McCormick's bond. We think also there was evidence even without the bill in equity, that the debt due Smythe was one which F. A. Whittaker had agreed to pay by his contracts given in evidence. If found nowhere else, it is found in the bond itself.

The errors assigned to the admission of the depositions and other evidence, are equally without merit. The record shows that rules of court were granted to take the depositions, and it has never been doubted, that courts have power to grant short rules. Besides, the plaintiff in error attended to cross-examine, and after that, he cannot be permitted to object, that sufficient notice was not given. If the depositions were taken in fraud of the rule,

[McCormick's Administrator *v.* Irwin.]

if the witnesses were not *going* witnesses, when the rule was only to take the depositions of such as were *going*, it was a matter for the control of the court below.    It is not reviewable here.

The objection to a portion of the subject-matter of the depositions, as well as to the admission of the testimony of Thomas Garret, misconceives the purpose for which the evidence was offered.    It was admissible to show that Whittaker had obtained possession of the property, under his contracts with Irwin.   It went thus to establish in part the primary liability of Whittaker to pay the debt due Smythe, and with that to establish that the payment of the decree by Irwin was not in equity a payment so as to discharge McCormick's bond.

The certified copy of the record from Clinton county could not have been rejected in the face of the prothonotary's certificate, that it contained "a full, entire, and attested copy of the whole record in the case, so full and entire as the same remained of record in his office:" 7 *W. & S.* 211, and cases there cited. By the decisions in this state, the admissibility of an exemplification of a record is put upon the certificate.    So it was stated in Christine *v.* Whitehill, 16 *S. & R.* 106; and so it has ever since been held.

None of the other assignments of error to the admission of evidence have been seriously pressed, nor could they be with any hope of maintaining them.

The first error assigned, even if it was an error, was waived by the appearance of the administrator, and his taking defence to the suit.

The judgment is affirmed.