## The Dollar Savings Bank, for use, &c., *versus* Burns.

1. Where one purchases at sheriff's sale a property subject to a mortgage, and subsequently pays off the mortgage, it is an extinguishment of the debt, and he cannot take an assignment of it and enforce it against the mortgagor.

2. B. borrowed a certain sum from the bank and gave therefor his bond and mortgage, which was duly recorded and became the first lien on certain land of B. M. subsequently obtained a judgment against B. on which this land was sold to M. The bank obtained judgment on its mortgage and issued a levari facias. Before sale M. paid the amount due the bank and from it an assignment to himself of the bond and mortgage. Then on the levari facias in the sheriff's hands the property was sold and bid off by M. He then sent the bond to another county and there caused judgment to be entered upon it. On the petition of B. the court opened the judgment and let him into a defence, and afterwards on the trial holding that the payment by M. extinguished the mortgage, and that he took nothing by the assignment, directed a verdict for B. *Held*, that this action of the court was not erroneous.

October 31st 1878. Before AGNEW, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. SHARSWOOD and WOODWARD, JJ., absent.

Error to the Court of Common Pleas of *Indiana county:* Of October and November Term 1878, No. 270.

Debt upon a bond by the Dollar Savings Bank, for use of the executor of Samuel McClurkan, deceased, against James M. Burns.

This was an action of debt on a bond, conditioned for the payment of $2000, made by defendant, James M. Burns, in favor of The Dollar Savings Bank, which was given for borrowed money. Burns did not deny that he executed the bond and got the money thereon, but he alleged that the bond was paid. He did not claim that he paid it himself, but said the bond was secured by a mortgage, which was the first lien on his property in East Birmingham; that McClurkan, a subsequent judgment-creditor, purchased this

property at sheriff's sale on his own judgment; that afterwards he purchased the bond and mortgage from The Dollar Savings Bank and had them assigned to him, and that this purchase and assignment paid and satisfied the debt.

McClurkan on the other hand claimed that the bond was not paid; that it is true he purchased the East Birmingham property at sheriff's sale, encumbered by a mortgage in favor of The Dollar Savings Bank, which being the first lien was not discharged by the sale, but that he never agreed or assumed to pay the mortgage, nor did he in any way incur liability on account of it; that the property was liable for its payment, if sufficient for that purpose, but if the property failed to bring an amount sufficient to pay the mortgage at sheriff's sale, other property of Burns's would be liable for such deficiency, and not himself; that the East Birmingham property was exhausted by a fair public judicial sale, and not having brought a sum sufficient to satisfy the mortgage, Burns was liable on his bond for the balance.

The court, Blair, P. J., inter alia, charged :—

"When McClurkan purchased the land under an execution issued on his own judgment, he became substantially the owner of it. He knew at that time of the existence of the mortgage, which was the first lien, and the land would be in the first instance liable for its payment. It is true that the bank was not bound to sell the land first. It could sell any other property of Burns under an execution on a judgment entered on the bond, but if it did Burns would be entitled to subrogation to the right of the bank in the mortgage as against McClurkan, who had purchased his equity of redemption to the end that the land mortgaged, which was primarily liable for the debt, might be made to bear the burden properly belonging to it. [If McClurkan can shift this burden to other property of Burns, it is plain that he would be getting the land of Burns without payment of the price he assumed to pay. How is such a result produced? By calling the payment of the money to the bank a conditional purchase of the securities. But calling it a purchase does not change the essential character of the transaction. It was a payment of the debt, and from thenceforth it ceased to exist. When the bank was about to sell on her mortgage, McClurkan came in and did what as between him and Burns it was his duty to do, paid the debt. From that moment the debt was extinguished, and although he took an assignment of it and carried on the execution as if nothing had happened, the sale was nevertheless powerless to give him any better title than he already had. The sale was unnecessary to discharge an encumbrance already extinguished.] If McClurkan could show some equity in himself that required us to treat the mortgage-debt as surviving its payment, a different question would be presented. As a general principle, when the legal and equitable estate unite in the same person, a merger is the

necessary result.    And when a vendee of land pays off a lien or encumbrance on the title of his vendor, that is undoubtedly the end of it, unless there is some special equity in the vendor rendering it necessary that it should be kept alive.    Zeigler v. Long, 2 Watts 205, and Moor v. Harrisburg Bank, 8 Watts 138, are instances in which the lien survives, notwithstanding payment by the owner of the land.    These are exceptional instances dependent on some equity; the general rule being that when the owner of the land acquires the title of a mortgage, the latter is merged in the former. It is frequently said that such merger will not take place when it is the interest of the owner that the lien should survive.    But this does not mean his interest in the sense of a mere speculation, or in the sense of some unfair advantage over the debtor.    Equity keeps it alive as a shield against injustice to the owner, and for no other purpose.    [It has not been suggested how any wrong can be done to McClurkan by treating his payment of the mortgage as an extinguishment of the debt.    When he gave the money to the bank the effect of this act was to pay the debt, and the assignment of the bond and mortgage to him must be treated as invalid.]    It is urged that extinguishment of the debt ought not to follow payment by McClurkan, but that he should be permitted to hold the bond and mortgage and proceed to have the mortgaged property sold by the sheriff, and ascertain by such sale whether it would bring a sufficient price to pay the debt, and if it did not, he should then be permitted to treat the bond as subsisting security for the balance, and collect it from other property.    [But he settled what he would give for the land in 1869, when he first purchased it at sheriff's sale.    That price was his bid, with the mortgage added.    To allow him recourse now to other lands for the purpose of making up this deficiency would be at the best permitting him to recompense himself for a bad bargain at the expense of Burns.    The effort on the part of plaintiff is to put himself, with regard to the bond and mortgage, in the same position as the bank.    We do not think this can be done.]    A mortgage is but a security for a debt.    If the bank had sold under it, and the sale did not produce a sufficient sum to pay the debt, it could proceed on the judgment-bond for the difference.    If the sale under the mortgage produced more than enough to pay the debt, the surplus would go to Burns if he had continued to own the equity of redemption at the time of the sale, and there were no other valid liens to absorb it.    As he was not the owner, the surplus would go to McClurkan, who stood in his place.    Now if McClurkan can call upon Burns for this deficiency, it would seem but fair that he should give him the surplus, to the end that all the advantages might not be on one side.    Then again, if McClurkan can be allowed to test the value of the land by a sheriff's sale, with the view of holding Burns for the difference between the mortgage-debt and the price at which it happens to be knocked down, when

should this test be applied? There was an interval of four years between the time when he purchased under process issued on his own judgment, and the time of his purchase under that of the bank. We think he could not allow the interest on the mortgage to run on and then at any indefinite time in the future throw the chances of the market on Burns. The price of land might fall greatly in the meantime, but this would not affect McClurkan if he may cast the loss on Burns. [If the question could arise at all between these parties it would be, what was the value of the land when McClurkan first bought it, for the debt secured by the mortgage was then due, and if the value of the property was to be tested by a sheriff's sale with the view of charging the mortgagor with this difference, it was the duty of McClurkan to apply the test then. The case is not distinguishable in principle from Cooley's Appeal, 1 Grant 401. You will observe, from the charge, that we are of the opinion the law is against the plaintiff, and that he cannot recover. Other reasons might be urged against his position, but we have said enough to indicate the principal grounds of our opinion. Your verdict should be for the defendant."]

The verdict was for the defendant accordingly, when plaintiff took this writ, assigning for error the foregoing portions of the charge in brackets.

*Bell & Banks*, for plaintiff in error.—McClurkan merely purchased the property charged with an encumbrance for which it was liable and could be exhausted to satisfy. His purchase of the bond and mortgage did not produce a merger. Why, then, should he be excluded from purchasing that bond and mortgage, and acquiring the right of the bank to them, just the same as any other person. There is no allegation of fraud in this case, or of irregularity in any of the proceedings, but it is claimed as a matter of law, independent of fraud or irregularity, that the legal effect of the purchase of the bond and mortgage by McClurkan, was to pay and satisfy the debt. This case differs from all others cited by defendants in this, that before the other property of Burns is sought to be held for this debt, the mortgaged property was exhausted, and credit given on the mortgage for the amount realized from the sale. It was exhausted by the only means it could be, an open, public, judicial sale. Burns cannot now complain if his property did not bring enough to satisfy the mortgage. There is neither extinguishment nor merger in this case, and there could have been no subrogation.

*Silas M. Clark*, for defendant in error.—The debt was extinguished by the sale.

[AGNEW, C. J.—Was this so to the extent of more than the value of the property?]

[Dollar Savings Bank *v.* Burns.]

The land makes it a payment, just as in Cooley's Appeal, 1 Grant 401.

[AGNEW, C. J.—That was not the case here.]

If it was not, no sale could have been made.

[AGNEW, C. J.—Then there could be no merger of title.]

That was already done, for when the sale took place McClurkan had the absolute title. I contend that the debt was paid by the sale. This arises by presumption of law : Fisher *v.* Clyde, 1 W. & S. 544. After the sale of the equity of redemption to Mc-Clurkan, the bank did not sell the property. The rights of the parties were fixed, and the assignment of the mortgage to Mc-Clurkan after the payment of the debt by him, and the sale of the property by him gave him no rights on the mortgage which was extinguished, because when he took the title it was his duty to pay it.

Mr. Justice GORDON delivered the opinion of the court, November 11th 1878.

From the history of this case we gather the following : James M. Burns, the defendant, borrowed from the Dollar Savings Bank, on or about the 10th of October 1864, the sum of $2000. To secure this amount he executed to the bank his bond and mortgage. This mortgage, being duly recorded, became the first lien on certain real estate of the mortgagor, situated in the borough of East Birmingham. Afterwards, Samuel McClurkan, the plaintiff, obtained a judgment against Burns, on which execution was issued, and, in due course, this same property was levied upon and sold to the plaintiff for the sum of $2700.

After McClurkan had, in this manner, acquired the defendant's title to the property, the bank obtained judgment on its mortgage and issued a levari facias. Before sale, however, McClurkan paid the amount due the bank, and took from it an assignment to himself of the bond and mortgage. Then, on the 10th day of the same month, on the levari facias already in the sheriff's hands, the property was offered for sale and bid off by McClurkan for $300. He then sent the bond to the county of Indiana, and there caused judgment to be entered on it to December Term 1876. On the petition of the defendant, the court opened this judgment and let him into a defence. When the case came on to trial, the court, holding that the payment by McClurkan extinguished the mortgage and that he took nothing by the assignment, directed a verdict for the defendant. Whether this action of the court was right or wrong is for us now to consider.

When McClurkan bid off the property at the sale, on his own judgment, he bid subject to the mortgage of the bank, and what he acquired by the sheriff's deed was Burns's equity of redemption. The mortgage, by the Act of 1830, being a charge upon the land,

the bid of the plaintiff, on the sale on the subsequent judgment, necessarily included this charge, and it became part of that bid. It is, therefore, obvious that as long as McClurkan chose to retain the premises he had acquired at the official sale, he could, by no process, direct or indirect, compel Burns to pay any part of the mortgage-debt, for that he had agreed to do himself. But more than this, had Burns been compelled to pay this debt, he would have been entitled to subrogation to the rights of the bank in the mortgage: Hansell *v.* Lutz, 8 Harris 284. And why this? Answer, in order that he might be enabled to enforce the mortgage against the land, which was the primary fund for its payment, otherwise the purchaser would unjustly escape the payment of the full amount of his bid. When, therefore, McClurkan paid the bank, he only did what he had agreed to do by his bid; the payment was in relief of his own land, and hence the assignment was fruitless. Suppose, upon payment, the bank had refused to assign, could the plaintiff have gone into court and compelled a subrogation? Certainly not, for that was a right which the mortgagor would have had, had he paid the bank, and that in order that he might enforce it against the purchaser at the sale, on the subsequent lien; how then can this purchaser claim the right to enforce a debt against the mortgagor which the mortgagor could have compelled him to pay? If, however, he was not at law entitled to subrogation, then the assignment could give him no right as against the mortgagor, for it was, after all, but subrogation by the voluntary act of the bank. Whatever equity he had arose from the payment of the mortgage, and as that act gave him no equity as against Burns, the transfer by the mortgagee did not better his condition.

And in this there is no hardship put upon McClurkan; he was not obliged to pay the mortgage; he was not personally bound by it; he might have abandoned his position as owner of the equity, and might have allowed the bank to proceed upon its mortgage and sell the premises. He then could have bought in the property for any price at which the bank might choose to let it be knocked down, but in that case, to be sure, he would have had to bid against the bank, and it is not probable he would in that event have obtained the premises for the paltry sum of $300, the amount for which they were sold, to himself, after he had obtained the control of the writ.

He did not, however, see fit to adopt this course; he chose rather to stand in Burns's right to retain the possession of the property and exercise his privilege as owner of the equity of redemption, and, having thus made his choice, he cannot now be permitted to abandon that choice, clothe himself with the powers of the mortgagee and pursue the mortgagor for money which he of right ought to pay and did pay to disencumber his own property.

The conclusion thus arrived at is supported by abundant authority.

[Dollar Savings Bank *v.* Burns.]

Mr. C. J. BLACK, delivering the opinion of the court in Carpenter *v.* Koons, 8 Harris 222, says: " The Act of 1830 provides that if the oldest lien be a mortgage, and the land be sold on a judgment, the sheriff's vendee shall take it subject to the mortgage. When the defendant made his purchase, therefore, he had, manifestly, no claim either on the mortgagor or anybody else, to pay off the whole mortgage and relieve him entirely from what was, probably, the most burdensome part of his contract. His share of the mortgage formed a part of the price he agreed to pay for the land. The statute of 1830 entered into and made one of the elements of his contract. There is," continues the learned justice, " a wide and palpable difference between one who buys land subject to a mortgage and has a reduction in the price equal to the amount of the lien, and another who pays its full value and stipulates for a title clear of encumbrances. Such a distinction is anything in the world but a theoretical subtlety." The like doctrine is held in Hansel *v.* Lutz, already cited. And in Cooley's Appeal, in 1 Grant 401, where certain persons who had purchased an estate at sheriff's sale, encumbered by prior mortgages, paid off those mortgages and took an assignment, it was held they were not entitled to be paid out of the assigned estate of the mortgagor. The court there said, citing Hansel *v.* Lutz, that the purchasers bought subject to the prior mortgages, and that when they paid them they did nothing more than their duty, and that the taking of an assignment to themselves was wholly fruitless.

So then, on authority, when McClurkan paid the mortgage he did no more than, under the Act of 1830, was his duty to do. His assignment was fruitless and gave him no right when executed, and the force of a sale afterwards certainly did not help the matter. If, by force of that assignment, he had no right as against the mortgagor, nothing that he could afterwards do would put into that paper what was not there when it was made.

The judgment is affirmed.