# Lackawanna Trust & Safe Deposit Company, Appellant, v. Gomeringer.

*Equity—Subrogation—Payment by volunteer—Mortgage.*

1. The doctrine of subrogation rests fundamentally on the equitable principle that when a party is required to pay a debt for which another is also liable and which that other in good conscience ought to pay, such payment should operate to invest the party paying with the creditor's rights and remedies against the other debtor.

2. Subrogation can be invoked only for the protection of one who has paid the debt of another because he had made himself legally liable in connection therewith. When under no liability himself in connection with the debt he voluntarily pays it, no equity can arise from the transaction calling for protection. In such case payment extinguishes the debt, except as the creditor received the money upon the understanding that the debt is to be assigned to the party paying. In such case the transaction being one of purchase, and not payment, the debt survives.

3. Where a corporation purchases real estate from two of its stockholders, and assumes the payment of a purchase money mortgage previously given by such stockholders, and subse-

quently executes a second mortgage, on which it defaults, and thereafter foreclosure proceedings are instituted on the first mortgage to the use of certain stockholders and directors other than the two who had sold the land to the company, who had bought the mortgage, the company in tendering payment of the amount due cannot make as a condition of such payment that the use plaintiffs shall assign the mortgage to a bank which was advancing the money; and if it pays the money into court, it cannot, after the money has been distributed, compel the use plaintiff by rule to make such an assignment.

4. In such a case, with the ultimate liability resting upon the corporation, no payment by it of the mortgage could give rise to an equity calling for subrogation, for its payment was of its own debt for which it was ultimately liable.

5. Where in such a case the bank was an entire stranger to the whole transaction without any liability in connection therewith and paid the mortgage at the request of the company, it is a mere volunteer, and no other or higher equity resulted than would have resulted to the company had it paid the debt with its own funds.

6. In such a case the alleged fact that the officers and stockholders who had bought the mortgage had done so for the purpose of seizing the company's property for their own use, is wholly irrelevant, inasmuch as they are not asserting any equity, but standing on their legal rights as creditors. The case must be determined not according to their equities, but according to the equities asserted by their opponents, and as it appears that the latter had no equity to subrogation ·or otherwise, the case is necessarily at an end.

Argued Feb. 21, 1912. Appeal, No. 32, Jan. T., 1912, by plaintiffs from order of C. P. Lackawanna Co., Nov. T., 1911, No. 54, making absolute rule for subrogation in case of Lackawanna Trust & Safe Deposit Company, Assigned to Carl Lorenz, Frederick Glatz and W. W. Leroy v. Christian Gomeringer and Adolph Haefner, a partnership doing business as the Standard Knitting Works. Before FELL, C. J., BROWN, POTTER, STEWART and MOSCHZISKER, JJ. Reversed.

Rule for subrogation.

NEWCOMB, J., filed the following opinion:

This motion arises out of a controversy between the Standard Knitting Works, a corporation, hereinafter called the defendant company, and its minority stockholders—three in number, hereinafter called the respondents—who have become dissatisfied with its management. Under assignment dated October 30, 1911, respondents acquired by purchase a judgment which is a first lien against the company's plant, secured by mortgage thereon. The mortgage is collateral to a bond with confession of judgment given in 1908 by Christian Gomeringer and Adolph Haefner, co-partners, to the Lackawanna Trust & Safe Deposit Company, hereinafter called the trust company. Thereupon the mortgagors conveyed the property, subject to the payment of the mortgage debt, to the defendant company which they had organized. The debt fell due July 3, 1911. October 4, 1911, judgment D. S. B. for the face of the debt and interest from maturity was entered on the bond, and, same day, a fi. fa. ordered by the trust company with notice to defendant company as terre tenant. At that time a contest was pending between the latter and the respondents for stay of execution on a like writ issued at their instance in August on a junior judgment held for their use by the Dime Deposit and Discount Bank which is disposed of by an order in connection with opinion filed herewith. Those proceedings are to No. 691, October term, 1911, and a temporary stay was in force when respondents bought the present judgment. The considerations regarded as decisive in favor of the relief asked for in that case are in a sense controlling here; and it is noted that by agreement of counsel the testimony taken in the other case is made part of the evidence in this.

The respondents are not only stockholders and creditors of the defendant company, but at the time they bought the judgment against it they were directors. One, indeed, was its president; another, its secretary.

In the meantime they have been succeeded by new officers elected at the annual meeting November 8th.

It will be observed that the notices for that meeting were sent out by the secretary in the usual way ten days in advance. Apparently that was on the eve of their purchase which, as already noted, purports to have been October 30th. Notwithstanding the preparation for the meeting the three absented themselves by agreement on the advice of the president in whose opinion "it wasn't advisable for us to go to that meeting." It is not without significance that the assignment was filed November 9th, the day following this meeting at which formal action had been taken looking to the transfer of this security to the County Savings Bank with which arrangements had been made to take it off respondents' hands as a means of getting further time, as appears by reference to the minutes. It may be it was the prospect of this action that suggested to the president the advisability of staying away. At all events the money being thereupon tendered by the bank in full of debt, interest and costs, on condition that the transfer be made, it was refused by respondents, though a counter offer was made to transfer both of their liens upon payment of both claims; otherwise they asserted their intention to proceed to a sheriff's sale, though admittedly in that event the corporate enterprise would collapse.

At the request of the company, as well as of the original obligors, the bank by leave of court then paid the amount of the writ in this case to the sheriff for the use of respondents and at its instance the present rule was granted for subrogation according to the terms of its agreement with the debtors.

Respondents took the money but they contest the motion for relief.

It is resisted first on the theory that the bank is a mere volunteer. That supposition is believed to be erroneous. One who pays a debt at the instance of the debtor on the faith of an agreement with him for sub-

stitution of the creditor's lien is not a volunteer: Haverford Loan & Bldg. Ass'n v. Fire Ass'n, 180 Pa. 522.

It is further contended that, being the equitable owners of the second mortgage held by the Dime Bank, respondents have rights which would be impaired if substitution were allowed. Just how that could be is by no means made clear. They have the money which had been invested in the first lien; as to the other they stand just where they did before. True, their intended foreclosure has been frustrated; but that is not the subject of indemnity at the expense of one who has loaned the money to retrieve the company's property from the impending sale. To all practical intents and purposes what they are asking is not that their rights shall be left in statu quo, but that their second lien shall be advanced to priority at the cost of the bank.

If their good faith were in no way called in question the point made touching their rights as junior lien creditors might be pertinent; though there is very good authority for the proposition that in general the holder of such lien has no equity to prevent subrogation as to the first: Home Savings Bank v. Bierstadt, 61 Am. St. Rep. 146 (168 Ill. 618); Levy v. Martin, 48 Wis. 198 (4 N. W. Repr. 35). Some lack of harmony is noticeable in the cases on the subject. But the rule is believed to be this: The mere fact that a creditor has two liens will not in itself give rise to any presumption of injury or prejudice to the second in case of his losing control of the first by means of substitution. The question, therefore, must be essentially one of fact in any given case. But it becomes unimportant here by reason of the status of respondents and the circumstances surrounding their acquisition of the first lien.

[They were officers of the defendant company charged with the duty of serving its interests. To the contrary thereof they bought the lien with intent to use it adversely to those interests; they bought admittedly for no other purpose than to seize the company's property

to their own personal use and advantage. True, they were creditors by virtue of the debt secured in the name of the Dime Bank on which execution had been stayed. The character of the relations of trust to defendant presents a feature here entirely analogous to that considered in connection with that execution and need not be again discussed.

Very likely they have reason to be dissatisfied with their corporate venture and distrustful of its management. One is not unmindful of their contention that they were only seeking to protect themselves against the consequences of mismanagement, etc. But, so long as they retained the badge of office and claimed to exercise its functions, they were the guardians of its estate and could not in good faith compass its death, nor take anything by their unsuccessful attempt. Says the secretary: "We bought for our own individual interests; we didn't consider the interests of the corporation."

Such directors cannot be heard to assert any equity, by reason of their ownership of the second mortgage, to prevent the subrogation now asked for.] (2)

[The rule to show cause is made absolute and it is ordered that the judgment in this case be marked to the use of the petitioner, the County Savings Bank; and that said bank be subrogated to all and singular the rights of the Lackawanna Trust & Safe Deposit Company, Frederick Glatz, William W. LeRoy and Carl Lorenz, or either of them, in and to the underlying securities, to wit, the bond on which judgment was entered together with the mortgage collateral thereto, recorded in the proper office of this county in Mortgage Book No. 162, at page 411.] (1)

*Errors assigned* were (1, 2) portions of opinion quoted above, and (3) in ordering subrogation in favor of the County Savings Bank.

*Samuel B. Price,* with him *Cole B. Price,* for appellants.—Subrogation will not be granted to the prejudice of another creditor. It will not be allowed to a volunteer: Coonrod v. Kelly, 119 Fed. Repr. 841; Draper v. Ashley, 104 Mich. 527 (62 N. W. Repr. 707); Hoagland v. Green, 54 Neb. 164 (74 N. W. Repr. 424); Gaskill v. Wales, 36 N. J. Eq. 527; Haverford Loan & Bldg. Assn. v. Fire Assn., 180 Pa. 522; Mosier's App., 56 Pa. 76; Hoover v. Epler, 52 Pa. 522; Wallace's Est., 59 Pa. 401; Armstrong's App., 5 W. & S. 352; Webster's App., 86 Pa. 409; Robinson v. Mailander, 2 Lack. Leg. News 168; Ætna Life Ins. Co. v. Middleport, 124 U. S. 534 (8 Sup. Ct. Repr. 625); Grace v. Kemp, 16 Pa. D. R. 815; Shinn v. Budd, 14 N. J. Eq. 234.

Directors may take mortgage for money advanced, and enforce collection: Buell v. Buckingham, 16 Ia. 284; Whitwell v. Warner, 20 Vt. 425; Mueller v. Fire Clay Co., 183 Pa. 450; Law v. Fuller, 217 Pa. 439; Mechanics' Bldg. & Sav. Assn. No. 2's Est., 202 Pa. 589; Sicardi v. Keystone Oil Co., 149 Pa. 148.

*Warren, Knapp & O'Malley,* for appellees.—Appellants had no right to buy in this mortgage for the purpose of forcing a sheriff's sale of the corporate property: Jackson v. Ludeling, 88 U. S. 616; Hallam v. Indianola Hotel Co., 9 N. W. Repr. 111; Huntley v. Goodyear, 182 Pa. 613; Hill v. Frazier, 22 Pa. 320; Bird Clay & Iron Co. v. Humes, 157 Pa. 278; Bedford R. R. Co. v. Bowser, 48 Pa. 29.

The County Savings Bank is entitled to subrogation: Stiger v. Bent, 111 Ill. 328; Sowers's App., 15 Alt. Repr. 898; Farmers' Bank v. Butterfield, 100 Ind. 229; Champlin v. Williams, 9 Pa. 341; Haverford Loan & Bldg. Assn. v. Fire Assn., 180 Pa. 522; Home Savings Bank v. Bierstadt, 168 Ill. 618 (48 N. E. Repr. 161); Emmert v. Thompson, 49 Minn. 386 (52 N. W. Repr. 31).

It seems that even a volunteer can obtain the right

of subrogation by contract: Mosier's App., 56 Pa. 76; Cottrell's App., 23 Pa. 294; Wilkins v. Gibson, 113 Ga. 31 (38 S. E. Repr. 374, 84 Am. State Rep. 204); Gans v. Thieme, 93 N. Y. 225; Campbell's App., 29 Pa. 401; Whiteselle v. Texas Loan Agency, 27 S. W. Repr. 309; Levy v. Martin, 48 Wis. 198 (4 N. W. Repr. 35); Citizens' Nat. Bank v. Wert, 26 Fed. Repr. 294; Hazle v. Bondy, 173 Ill. 302 (50 N. E. Repr. 671); Miller v. Stark, 61 Ohio 413 (56 N. E. Repr. 11); Huston's Appeal, 69 Pa. 485; Everston v. Bank, 33 Kan. 352 (6 Pac. Repr. 605); Weimer v. Talbot, 56 W. Va. 257 (49 S. E. Repr. 372).

OPINION BY MR. JUSTICE STEWART, April 29, 1912:

The record shows these facts. Gomeringer and Haefner, partners, with a view to establishing thereon a manufacturing plant, purchased from the Lackawanna Trust & Safe Deposit Company a lot of ground in the city of Scranton, giving in part payment therefor their bond in the sum of $3,250, secured by mortgage on the premises. Subsequently a corporation was formed under the name of the Standard Knitting Works, of which Gomeringer and Haefner were the principal promoters, to which they conveyed the lot of ground above mentioned, subject to the payment of the mortgage referred to. To supply the corporation with needed funds, certain of the stockholders and directors from time to time endorsed the notes of the corporation, and for their security took from the corporation a mortgage in the sum of $20,000, in the name of H. W. Mumford, trustee, payable in five years after date, the interest thereon payable semi-annually, with the provision that in default of payment of the semi-annual interest for a period of thirty days the entire principal and interest might be declared due and payable, and the mortgage foreclosed at the option of the holder. Mumford assigned the mortgage as additional security to the Dime Deposit & Discount Bank, the holder of the endorsed

notes. Default occurring in payment of semi-annual interest due 1st July, 1911, at the expiration of thirty days thereafter, the default continuing, the bank caused execution to issue and the property of the corporation was accordingly levied upon. On the application of the general manager of the corporation, a rule to show cause why the execution should not be stayed was granted. While this rule was pending and undeter- mined, the Lackawanna Trust & Safe Deposit Company caused judgment to be entered on the bond accompany- ing the mortgage given it as part of the purchase money for the lot conveyed to Gomeringer and Haefner, and subsequently conveyed by them to the corporation. Under this execution the property of the corporation was levied on and advertised to be sold. To avoid this sale the corporation authorized its general manager to secure funds necessary to pay off the purchase money mortgage. The latter applied to the County Savings Bank, the real party here in interest. This bank was willing to advance the necessary funds, if it could be subrogated in the mortgage to the rights of the Lacka- wanna Trust & Safe Deposit Company, but not other- wise. When application was made to the latter com- pany for its assent to such arrangement, it was dis- covered that certain directors of the Standard Knitting Works, Lorenz, Glatz and Leroy had become the owners of the mortgage by purchase, after the execution had issued thereon. These parties, against whom it is al- leged that they were active in procuring the previous execution on the $20,000 mortgage, in which they were interested to issue, refused to make any assignment of the mortgage. The full amount of debt, interest and cost was tendered them, only on condition however that they would assign their rights in bond, mortgage and execution to the County Savings Bank, which was ad- vancing the money; but the tender was declined be- cause of the condition. Thereupon the money was paid into court, and then paid over to the execution credi-

tors without contest; but at the same time a rule was applied for and granted requiring Lorenz, Glatz and Leroy to show cause why the County Savings Bank should not be subrogated to the mortgage. This rule was made absolute, and from that decree this appeal has been taken.

It does not concern us at this point of the case to inquire into the relations the appellants sustained to the Standard Knitting Works. For present purpose they may be regarded simply as bona fide creditors. What we are first to consider is the right of the County Savings Bank, as against the resistence of the appellees, holders of a second mortgage, to be subrogated to the rights of the latter in connection with the first mortgage which the bank has paid.

The doctrine of subrogation rests fundamentally on the equitable principle that when a party is required to pay a debt for which another is also liable and which that other in good conscience ought to pay, such payment should operate to invest the party paying with the creditor's rights and remedies against the other debtor. And this is the mode which equity adopts to compel the ultimate payment by him who in good conscience ought to pay the debt, to the relief of him to whom none but the creditor could ask to pay. A simple statement of the principle is all that is here required; any elaboration of it would be simply a repetition of what has been said so frequently in cases where the doctrine has been discussed and applied. This much is involved in the very definition of the principle, viz, that it can be invoked only for the protection of one who has paid the debt of another because he had made himself legally liable in connection therewith. When one under no liability himself in connection with the debt voluntarily pays it, no equity can arise from the transaction calling for protection. In such case payment extinguishes the debt, except as the creditor receives the money upon the understanding that the debt is to

be assigned to the party paying. In such case the transaction being one of purchase and not payment, the debt survives. It is manifest however that the transaction can take this shape only as the creditor assents. All that the debtor can demand of the creditor is a discharge of his liability upon payment. He is in no position to require a transfer of it to another. A volunteer who steps in and pays the debt has no higher rights. So it is evident that the right to subrogation can result only when the party paying was not a primary debtor, but yet a party legally liable for the debt at the suit of the creditor. In this case the primary debtors were Gomeringer and Haefner, who contracted the indebtedness and secured its payment by their bond and mortgage. But, in accepting a conveyance of the mortgage property, the Standard Knitting Works as between it and its vendors made the debt its own and assumed to protect its vendors: Moore's Appeal, 88 Pa. 450; Stanhope's Est., 184 Pa. 414. Here, therefore, while the primary debtors were Gomeringer and Haefner, ultimate liability rested on the Standard Knitting Works by its own undertaking, and had payment been exacted of Gomeringer and Haefner they would have had an equity over against the Standard Knitting Works which would have entitled them to be subrogated to the mortgage. But with ultimate liability resting on the Standard Knitting Works no payment by it of the mortgage could give rise to an equity calling for subrogation, for its payment was of its own debt for which it was ultimately liable. The County Savings Bank was an entire stranger to the whole transaction, without any liability in connection therewith, and when at the request of the Standard Knitting Works it paid the mortgage no other or higher equity resulted than would have resulted to the Knitting Works had it paid the debt with its own funds. The learned chancellor before whom the case was heard clearly recognized in his opinion the rule that denies subrogation to a mere volunteer; but

held that the bank in paying this mortgage was not a
volunteer. He rests his conclusion as to this upon the
case of Haverford Loan & Building Asso. v. Fire Assn.,
180 Pa. 522. In that case subrogation was allowed, but
on facts radically different from those we have here.
There, one Dougherty, in the belief that he was the sole
owner of certain lands encumbered by a mortgage, pro-
cured from a building and loan association acting in
the same belief, a loan which he secured by a mortgage
upon the land. At the request of Dougherty, the asso-
ciation applied part of the money in payment of the
earlier mortgage. It was subsequently discovered that
Dougherty owned but an undivided one-fifth interest in
the land as a tenant in common with four others. It
was conceded that Dougherty having relieved the com-
mon estate of an encumbrance, was entitled to distri-
bution from his co-tenants and could enforce the right
by subrogation to the mortgage. The only question was
whether the association succeeded to this right in
Dougherty. It was in connection with this one ques-
tion that the expression occurs in the opinion in that
case, that the association was not "a mere volunteer,"
inasmuch as it had paid the prior mortgage at the re-
quest of Dougherty. No more in this case was the
County Savings Bank "a mere volunteer," in the same
sense, as against the Standard Knitting Works, for the
money was applied in payment of the mortgage at its
request. The distinction is that in the one case Dough-
erty had an equitable right to contribution as against
his co-tenants, and because of this fact it was deter-
mined that to these rights the association succeeded;
while in the present case, the ultimate liability for the
payment of the mortgage resting on the Standard Knit-
ting Works, that company could derive no equitable
rights from paying its own debt, and could look to no
one for contribution or reimbursement. Having no
right in itself of this kind no one could claim such right
through it. Not only does the case referred to afford

no warrant for the conclusion reached by the learned chancellor, but it may be confidently asserted that in no one of our authorities is any other standing than that of mere volunteer given to one who has paid the debt of another under circumstances similar to those we have here. Out of the many cases supporting the views we have expressed above special reference need only be made to the cases of McCormick v. Irwin, 35 Pa. 111; Dollar Savings Bank v. Burns, 87 Pa. 491; Webster and Goldsmith's Appeal, 86 Pa. 409.

We come now to the second reason given by the learned chancellor in support of the decree made. He says, "They (the appellees) were officers of the defendant company charged with the duty of serving its interests. To the contrary thereof they bought the lien with intent to use it adversely to those interests; they bought admittedly for no other purpose than to seize the company's property to their own personal use and advantage. True, they were creditors by virtue of the debt secured in the name of the Dime Bank on which execution had been stayed. . . . . One is not unmindful of their contention that they were only seeking to protect themselves against the consequences of mismanagement, etc. But, so long as they retained the badge of office and claimed to exercise its functions, they were the guardians of its estate and could not in good faith compass its death, nor take anything by their unsuccessful attempt. Such directors cannot be heard to assert any equity, by reason of their ownership of the second mortgage, to prevent the subrogation now asked for." The error here is so manifest that it needs no discussion. Admitting the facts to be as stated, what relevancy have they to this issue? The appellants are not asserting any equity, but standing on their legal rights as creditors. The case must be determined not according to their equities, but according to the equities asserted by their opponents. The whole burden is upon the latter, who alone are asking for

equitable relief. They have not shown themselves entitled to any equitable interference, as we have tried to make clear, and with their failure in this regard the case was necessarily at an end. The inquiry as to the conduct of appellants as directors of the Standard Knitting Works was not only wholly foreign to the issue that was before the court, but was a matter in which the real party in interest here, the County Savings Bank, could have no possible standing to be heard. The other petitioners would have had standing had they pursued the same course with respect to the execution on the first mortgage as they pursued with respect to the execution on the second. Instead of paying the latter off they asked a stay of execution on the ground that appellants being directors of the Standard Knitting Works had acquired the mortgage and were using it to "compass the company's death and seize its property to their own personal advantage." Had they done this and made good their complaint as to the facts, while the equity power of the court could not have divested appellants of their property, it would have been quite sufficient to restrain the exercise of their rights in connection therewith within such limitations as would have prevented their accomplishing a purpose which the law would condemn. The present proceeding afforded the court no such opportunity, and the facts upon which the chancellor so largely relied, were wholly outside the case.

The assignments of error are sustained, and the decree is reversed at the cost of appellees.