## Ramonat Estate

TAXIS, J., December 11, 1959.—The account shows a balance for distribution of $7,471.01, composed of cash.

By reason of a number of claims much in excess of that amount, the estate has been returned by the Commonwealth as insolvent for the purposes of the transfer inheritance tax.

Since the estate is insolvent, the claim of the funeral director in the amount of $931.40 is allowed only in the amount of $400 as is our custom in insolvent estates.

At the time of the audit, Eleanor Ramonat, the widow, claimed the net proceeds of the sale of premises 5702 Chester Avenue, Philadelphia, in the amount

of $6,734.67, which are presently in the hands of the administrator and included in the account.

The parties have stipulated the facts which are as follows:

At the time of decedent's death on December 15, 1957, decedent owned in his own individual name premises 5702 Chester Avenue, Philadelphia, by deed dated November 6, 1929.

At the time of his death, premises 1101 Pennhurst Lane, Penn Valley, Lower Merion Township, was owned in the joint names of decedent and claimant, Eleanor Ramonat, as tenants by the entireties by deed dated October 29, 1954.

On or about October 29, 1954, decedent and his wife jointly executed a bond and mortgage to the Home Life Insurance Company dated October 29, 1954, in the principal sum of $34,000, repayable in installments. The mortgage was secured by premises 5702 Chester Avenue, Philadelphia, owned by decedent in his individual name, and by premises 1101 Pennhurst Lane, Penn Valley, Lower Merion Township, owned by decedent and his wife as tenants by the entireties. The principal of the mortgage was reduced by payments on account from time to time.

After the death of decedent and on or about March 21, 1958, claimant widow, Eleanor Ramonat, sold premises 1101 Pennhurst Lane, Penn Valley, Lower Merion Township, to George Vacca and his wife for the sum of $40,750. Settlement for the premises was made at the office of the Title Insurance Corporation of Pennsylvania on March 21, 1958. At the settlement the widow, Eleanor Ramonat, out of the proceeds of said sale, paid to the Home Life Insurance Company the sum of $22,521.10, being the balance then due for principal and interest on the mortgage, which mortgage was then a lien on premises 1101 Pennhurst

Lane, Penn Valley, Montgomery County, and also on premises 5702 Chester Avenue, Philadelphia. The mortgage was thereafter satisfied of record.

Decedent and his wife, the said Eleanor Ramonat, filed a joint income tax return for the year 1955 with the Internal Revenue Service, but decedent neglected to pay the amount of the tax shown thereon. The Internal Revenue Service therefore made an assessment against decedent and his wife on October 8, 1957, in the amount of $4,608.01 for unpaid income tax for the year 1955. Thereafter, on February 20, 1958, which was after the death of decedent, the Commissioner of Internal Revenue filed a lien in the prothonotary's office of Philadelphia County for the sum of $4,608.01 due for 1955 income taxes against decedent and his widow. The said lien for income taxes against decedent and his wife was also filed in the prothonotary's office of Montgomery County on February 15, 1958, and became a lien also on premises 1101 Pennhurst Lane, Penn Valley, Lower Merion Township, then owned by the widow.

At the time of settlement of premises 1101 Pennhurst Lane, Penn Valley, the widow, out of the proceeds of the said sale, paid to the Internal Revenue Service the amount of the said tax lien, to wit, $4,-608.01, in full settlement and payment therefor, and the said lien was satisfied of record.

On or about September 15, 1958, the administrator of the estate sold 5702 Chester Avenue, Philadelphia, Pa., free of all liens for $7,500, and the net proceeds of the said sale, to wit, $6,734.67, is presently in his possession and is accounted for in the present account before the court.

The widow points out that the jointly held property, the Pennhurst Lane premises, became her sole and absolute property at the time of her husband's death, and hence correctly notes that when the out-

standing mortgage was satisfied in full at the time of settlement for these premises, she paid the entire indebtedness of joint obligors, namely, her husband and herself. In Dowler Estate, 368 Pa. 519, the court has set forth the rule that in such situations the widow or surviving spouse is entitled to contribution for one-half of the total indebtedness from the other joint obligor, namely, her husband's estate. The widow also points out that the Chester Avenue premises were also included in the terms of the mortgage obtained at the time of the purchase of the Pennhurst property as additional security. The widow therefore contends that she is now subrogated to the rights of the mortgagee which apply to the Chester Avenue premises, as well as to the Pennhurst Lane premises. See Lackawanna Trust & Safe Deposit Company v. Gomeringer, 236 Pa. 179; Goldman v. Mitchell-Fletcher Co., 292 Pa. 354.

The United States Government claims the balance of the estate on the basis of a proof of claim filed on June 29, 1959. The proof of claim is for taxes due solely from decedent in the amount of $61,563.29. The Government recognizes the widow's rights to contribution under the Dowler case, but contends that this right is an inchoate and unperfected right which is inferior to the claim of the United States Government, and, further, that the right of contribution is separate and distinct from the right of subrogation. If the widow is subrogated to the rights of the mortgagee as against the Chester Avenue premises, her claim would enjoy priority over that of the Government. It is the position of the Government that the widow is not entitled to the right of subrogation in these circumstances.

The doctrine of subrogation is an equitable one. In American Surety Company's Appeal, 334 Pa. 317, at page 320, the court discussed the right of subroga-

tion in relation to the sovereign's [in this case the Commonwealth's] right of priority, as follows:

"Even if the Commonwealth's right of priority *could* pass by way of subrogation, it would be unjust to the general depositors to enforce it for the benefit of the company whose business it is to act as a surety on depository bonds and which has met its obligation on such a bond by paying a claim of the Commonwealth. *Subrogation is not a matter of right, but of equity, and is not permitted when inequity would result, or when it would operate to the prejudice of the legal or equitable rights of others. . . ."* (Italics supplied.)

After carefully considering the problem, I conclude that, as an equitable matter, it would be most unjust to extend to the widow in this case the right of subrogation to the rights of the creditor against the Chester Avenue premises. From the moment of her husband's death, the widow became the sole and absolute owner of the Pennhurst Lane premises. As a result this property did not form any part of decedent's estate and was in no way subjected to the claims of his general creditors. The property, however, did continue to be subject to the secured joint obligation of the husband and wife. At the sale, this joint obligation was satisfied from the proceeds of the property which had been jointly owned by decedent and his wife during their lifetime. This property was not sold under and subject to the mortgage and hence the proceeds from the sale represented the full market value of the property undiminished by the outstanding encumbrance. The widow now seeks to invoke the equitable doctrine of subrogation to, in effect, elevate to a preferred status her claim arising out of the right of contribution, which, in turn, arises solely from the transaction involving the Pennhurst Lane premises now owned by the widow. The sought-for preference, however,

would extend to the proceeds of the sale of the husband's individually owned property, the Chester Avenue premises. The inequity of permitting such a preference to this claim is apparent.

The mortgage debt initially was undertaken to purchase the Pennhurst Lane property, and the Chester Avenue property was included in the mortgage to furnish a small amount of additional security. Between the time of purchase and sale of the Pennhurst Lane property, the mortgage debt was reduced from $34,000 to $22,521.10, and the value of the Pennhurst Lane property became almost twice as great as the amount due on the mortgage debt. The small amount of security furnished by the Chester Avenue property was unnecessary to secure the outstanding debt. Strong equitable considerations compel the conclusion that the mortgage debt be satisfied entirely from sale of the property acquired through the mortgage, while the proceeds of the Chester Avenue property be applied to debts other than the mortgage debt. Clearly the legal rights of others, in this case the United States Government, would be inequitably extinguished if the suggested procedure were adopted.

The widow has also urged that she is entitled to be subrogated to the lien of the Government for income taxes which she paid in the amount of $4,608.01. This claim of the Government was a lien on the Chester Avenue premises. The assessment was made prior to decedent's death, namely, on October 8, 1957, and, being based on a joint return, was a joint obligation. If the doctrine of subrogation were applied to any right of contribution the widow enjoys on this payment, the widow would be subrogated to the rights of the United States Government. However, a subrogation to the rights of the Government should not be allowed to defeat the priority of the Government conferred by section 3466 of the Revised Statutes, 31

U. S. C. A. §191. As stated in United States v. National Surety Company, 254 U. S. 73, 76: "To accord such equality would abridge the priority expressly conferred upon the Government".

Accordingly, the claim of Eleanor Ramonat is hereby dismissed. . . .

And now, December 11, 1959, this adjudication is confirmed nisi.

*Ronald H. Israelit*, and *Harry Polish*, for exceptant.

*Lawrence A. Brown*, and *John T. Curtin*, of *Duffy, McTighe, & McElhone*, contra.

*Mabel G. Turner* and *Paul D. Ritter*, for United States Internal Revenue Service.

### Opinion Sur Exceptions

TAXIS, P. J., January 14, 1960.—Five exceptions were filed to the adjudication of this court dated December 11, 1959, in which the court dismissed the claim of Eleanor Ramonat. Exceptant contends, inter alia, that the court erred in failing to recognize her right of subrogation in circumstances more fully recited in the adjudication.

This is a hard and a difficult case presenting most unusual facts. No case has been cited or found which is helpful in disposing of the problem presented. The matter was disposed of by the court on what it considered to be "the equities" of the case. In this respect nothing can be profitably added to what has already been fully recited in the adjudication. Among other arguments ably made by counsel for the exceptant is one in which it is contended that since the widow is not a paid surety, in business for profit, a more lenient consideration of her rights of subrogation should have been applied by this court. Suffice it to say that her status as a nonprofessional surety was considered and weighed as a factor in originally disposing of this

problem. The cases cited by the court in its adjudication involving paid sureties were cited for the restricted purposes which are clearly disclosed therein.

And now, January 14, 1960, after careful consideration of arguments of counsel and their briefs, I conclude that the adjudication fairly and equitably disposes of this matter. The exceptions are dismissed and the adjudication confirmed absolutely.