# Estate of Jane G. Stanhope. Appeal of Charles W. Miller.

*Mortgage—Subrogation—Duty of purchaser to indemnify mortgagor against mortgage.*

A person who purchases land subject to a mortgage is bound to indemnify his vendor from all loss growing out of the mortgaged debt, and this is the case, although there has been no assumption of the mortgage by the purchaser.

A mortgagor, who after sale has been compelled to pay by suit upon his bond, is entitled to be subrogated to the rights of the mortgagee against the mortgaged estate.

*Equity—Suretyship—Liens—Distribution—Mortgage.*

In the distribution of a fund equity forbids payment of a prior lien as against a subsequent execution creditor standing to the owner of the first lien in the relation of surety.

Testatrix devised to H. a half interest in certain real estate, upon all of which real estate testatrix had previously given H. a mortgage. Subsequently F. purchased the bond and mortgage from H., and also her undivided one half interest in the realty. The mortgage was assigned to' M. to keep it alive as against the entire realty. F. presented the bond for payment out of the estate of the testatrix. The claim was objected to by H. who was one of the two sole legatees of testatrix. *Held*, that the claim should be disallowed.

Argued Jan. 6, 1898. Appeal, No. 141, Jan. T., 1897, by Charles W. Miller, from decree of O. C. Phila. Co., sustaining exceptions to adjudication. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to adjudication.

The auditing judge, ASHMAN, J., reported the facts to be as follows :

The decedent gave to Mary E. Heisler her bond and mortgage, dated January 1, 1887, for $5,000, with interest from January 1, 1886. The mortgage was secured upon certain premises, one half interest in which was afterwards devised to Mrs. Heisler by the testatrix. In April, 1896, Robert Foerderer purchased from Mrs. Heisler for $30,000 her right and

title in one half of the said premises, together with the bond and mortgage for $5,000, and her half interest in a certain verdict for $7,500, which had been recovered against the city. Something had previously been paid on account of the mortgage and it was valued at $4,500; the net one half amount of the verdict was taken at $3,500; and, deducting brokerage, the actual cash consideration for the real estate was $21,500. Foerderer's purpose in buying the mortgage was said to be to secure for himself control over the real estate, because he thereby owned one half of the premises and a mortgage which bound the half owned by Mrs. Lukens, the other devisee. The mortgage had been assigned to Charles W. Miller to keep it alive as against claimant's own share of the real estate. The agent of Mrs. Heisler declared that a part of the bargain was that the bond was not to be presented for payment and that the real estate alone was to be resorted to upon the mortgage. This was denied by the agent for the purchaser. The reason of the thing seems to lie with the latter. A promise of the sort would have been without consideration, and at all events it would have been in contradiction of the instrument which was unconditional in its terms. The contract, while a very peculiar one, was in reality very simple of comprehension. Foerderer paid $21,500 for the real estate of Mrs. Heisler. He also paid her $4,500 for a mortgage of $5,000, reduced by a payment on account, of $500. He apparently bought this mortgage, not for a speculative purpose, but as a method of controlling the disposition of the property of his co-owner. Whether there was a merger as to one half when the title to the mortgage and to one half of the real estate mortgaged, met in the same person, is a question of intention. That the holder of the mortgage did not believe that it had merged, is proved by her sale of it for its full face value, and by her declaration of no set-off. The present holder is entitled to payment out of the personal estate, that fund being primarily liable. If the mortgage alone can be sued upon, the purchaser will recover upon that security only half of what he paid for it. If this finding of facts and the inference drawn therefrom are correct, the auditing judge is at a loss to imagine why the agreement of counsel for Charles W. Miller was ever drawn.

The adjudication was that Foerderer was entitled to payment of the bond out of the personal estate.

Mary E. Heisler excepted to the adjudiction as follows:

1. The auditing judge erred in deciding that the present holder of the bond presented, Robert H. Foerderer, is entitled to payment out of the personal estate; that fund being primarily liable. 2. The auditing judge erred in not deciding that the exceptant was entitled to be subrogated to the credit of one half of the amount awarded to the said Robert H. Foerderer. 3. The auditing judge erred in not awarding to exceptant one half of the amount of the bond presented by the said Robert H. Foerderer, with interest.

Exceptions to the adjudication were sustained, PENROSE, J., filing the following opinion:

The purchase of the interest of one of the devisees in the property subject to the mortgage of the testatrix from whom she acquired it, imposed upon the purchaser, as has often been decided: Buckley's Appeal, 48 Pa. 491; Burke v. Gummey, 49 Pa. 518; Moore's Appeal, 88 Pa. 450; the obligation of indemnifying his vendor from all loss or liability growing out of the mortgage debt. And this even though there has been no assumption of the mortgage by the purchaser: Trevor v. Perkins, 5 Whart. 252, for in such case the land, as between vendor and purchaser, is made the primary fund for payment, and the vendor becomes surety, merely: Harris v. Jex, 66 Barbour, 232; Freeman v. Auld, 44 N. Y. 50. This duty of the purchaser to indemnify is not dependent upon contract, but grows out of principles of justice and equity. As was said by Lord ELDON, in Waring v. Ward, 7 Vesey, 337; "The purchaser of an equity of redemption means at the time of the contract to buy the estate subject to the mortgage. . . . . If he enters into no obligation with the party from whom he purchases, neither by bond nor contract of indemnity to save harmless from the mortgage, yet this Court, if he receives possession and has the profits, would, independent of contract, raise upon his conscience an obligation to pay money due upon the vendor's transaction of mortgage; for becoming owner of the estate he must be supposed to intend to indemnify the vendor against the mortgage." The reason is very

obvious. Having bought only what remains after the mortgage has been paid, if permitted to take advantage of recovery by the mortgagee upon the personal contract of the mortgagor, he would, without additional payment, get the property clear of incumbrance. And hence it is well settled that a mortgagor, who after sale has been compelled to pay by suit on his bond, is entitled to be subrogated to the rights of the mortgagee against the mortgaged estate.

That the purchaser in the present case became also the purchaser of the mortgage does not affect the result. Ordinarily such a purchase would operate as an extinguishment; but as the mortgage covered the entire property of which he bought only one half, it was proper to keep it alive—not to permit suit on the bond, but in order that the other half of the land should not be discharged. The devisees were also the sole legatees of the decedent, and thus, in effect, the parties paying her personal obligations; and it is clear, therefore, that the share of personalty of the one who sold her interest in the real estate subject to the mortgage cannot be taken from her by the purchaser through the instrumentality of the bond. His rights as holder of the mortgage do not change his obligations as purchaser of the land bound by it. The debt, to the extent of one half, has become the debt of his share of the land, and he cannot, of course, compel another to pay it, much less the person whom he is bound to indemnify against any payment whatever.

This follows also as a consequence of the principle of equity which in the distribution of a fund forbids payment of a prior lien as against a subsequent execution creditor standing to the owner of the first in the relation of surety: Worrall's Appeal, 41 Pa. 524; Datesman's Appeal, 77 Pa. 243; Rynd v. Natatorium, 173 Pa. 237, and this is precisely the relation which the vendor bears to the purchaser in this case.

The agreement was that Mrs. Heisler should receive for her interest in the land bound by the mortgage $23,147.50, and for the mortgage $4,250. If the purchaser can by proceeding on the bond of the testatrix take from Mrs. Heisler, as legatee, one half of the amount required to pay, it is evident that she receives just $2,125 less than he agreed she should have; while the land for which he paid $23,147.50 would, by reason of the removal of the burden, be increased to $25,272.50.

The exceptions are sustained, and the adjudication modified accordingly.

*Errors assigned* were in sustaining exceptions to adjudication.

*Isaac D. Yocum*, for appellant.—The doctrine of substitution being one of mere equity and benevolence will not be enforced at the expense of a legal right: Fink v. Mahaffy, 8 Watts, 384; Wallace's Est., 59 Pa. 401; Wagner v. Elliott, 95 Pa. 487; Lloyd v. Galbraith, 32 Pa. 103.

*Alex. Simpson, Jr.*, with him *John W. Savage*, for appellee.— Foerderer bought from appellee her interest in the realty subject to the mortgage, so that as between him and her he is liable for the mortgage debt.   He must indemnify her for any loss she may suffer if she is called upon to bear it or any part of it.   And this is not dependent on proof of an agreement, but is a presumption of law: Blank v. German, 5 W. & S. 36; Burke v. Gummey, 49 Pa. 518; Metzgar's App., 71 Pa. 330; Kelley v. Walden, 5 Phila. 446; Heritage v. Bartlett, 8 W. N. C. 26; Blood v. Crew Levick Co., 171 Pa. 328; Trevor v. Perkins, 5 Whart. 252; Taylor v. Preston, 79 Pa. 436; Green v. Rick, 121 Pa. 130.

The only other possible question which could arise would be whether exceptant must submit to Foerderer getting the money and then sue him for indemnity, but (*a*) Foerderer does not desire this, as evidence the agreement; (*b*) circuity of action is avoided by the present course; (*c*) a court acting upon equitable principles is not forced to such an absurdity; (*d*) Blood v. Crew Levick Co., 171 Pa. 336, rules the point.

PER CURIAM, January 17, 1898:
We find no error in the decree from which this appeal was taken.   Neither of the specifications of error requires discussion or even special notice.   The questions involved were fully considered and correctly disposed of by the learned court below; and, on its opinion, the decree is affirmed and the appeal dismissed at appellant's costs.