## Philadelphia Saving Fund Society v. Stern et ux.

462

*Charles J. Biddle,* for plaintiff.

*Joseph H. Lieberman,* for defendants.

ALESSANDRONI, J., June 30, 1941.—Defendants have filed two rules to open two confessed judgments entered by plaintiff on two bonds executed by defendants and secured by mortgages on real estate. From an examination of the pleadings and the admissions contained therein, the depositions taken in support thereof, and the stipulation of counsel, the following facts are substantially undisputed.

On November 9, 1922, defendants, husband and wife, acquired title to two properties from one Michael Weinstein. On the same day they executed purchase-money bonds in favor of Michael Weinstein secured by two mortgages on the properties purchased. About a year later, on September 4, 1923, defendants conveyed the properties under and subject to the two mortgages to Rubin Wexelblatt and Benjamin Perlstein. The grantees then subjected the properties to two second mortgages running to the 60th & Market Streets Building & Loan Association. On June 13, 1924, Wexelblatt and Perlstein conveyed the properties to Harry Yelshin under and subject

to the first and second mortgages. On November 23, 1925, Michael Weinstein, defendants' grantor, assigned the two first mortgages and bonds to plaintiff herein. A default occurred under the terms of the second mortgages and the building and loan association foreclosed and took title to both properties at a foreclosure sale by sheriff's deeds dated July 15, 1929, neither of which contained an "under and subject" clause. Subsequently the New Epoch Building & Loan Association, successor to the 60th & Market Streets Building & Loan Association, conveyed both properties to plaintiff herein by deed dated September 6, 1932. These deeds contained an expressed stipulation that it was not intended thereby to merge the interests of plaintiff as mortgagee and as owner of the fee, but that the mortgage would remain and continue in full force and effect for all purposes as though the conveyance had not been made. Plaintiff still holds title to those properties.

Subsequently, plaintiff discovered that there was a deposit in its savings fund department in the name of Reba Stern in trust for Abram Stern. Accordingly, on April 26 and 27, 1940, plaintiff entered judgments by confession on the two bonds of defendants and set off the amount due under the bonds together with delinquent interest to date and the carrying charges up to September 6, 1932. Reba Stern was advised of this action when she attempted to withdraw all the moneys standing to her credit in the account.

The petitions to open judgment, in addition to raising a question of law, also raised a question of fact as to whether defendants signed the two bonds and mortgages. This theory of forgery has been abandoned. Plaintiff, on September 12, 1940, tendered to defendants an assignment of the two mortgages and offered to execute and prepare deeds to the properties running to defendants if they so desired, it being plaintiff's position that defendants, having paid the amount due on the bond, were entitled to either an assignment of the mortgages or a conveyance of the properties. These tenders were refused. The rec-

ord establishes that in operating the properties plaintiff has sustained a net loss, the income being insufficient to pay the necessary costs of repair, taxes, and insurance.

Defendants contend that, upon conveyance of the fee, plaintiff released the liability on the original bond. The evidence clearly indicates that the conveyances were made to plaintiff for no consideration when the association realized it was no longer able to protect its equity.

The question involved is whether an obligee of a bond accompanying a mortgage may not hold the mortgagor responsible for the amount remaining due, when such obligee has taken title to and become the owner of the mortgaged real estate by a voluntary conveyance from an intermediate grantee which itself acquired title from the sheriff by foreclosure on a second mortgage.

Defendants rely upon those cases which hold that where the owner of a mortgage acquires title to the property, under and subject to its own mortgage, it cannot recover from the mortgagor who can take advantage of the completed chain of indemnity and prevent a circuity of action: Stanhope's Estate, 184 Pa. 414.

Where a property has been subjected to a first mortgage and the mortgagor thereafter conveys the premises to another under and subject to that mortgage, the grantee and each subsequent grantee in turn, by taking title, impliedly agrees to indemnify his grantor against loss which may be suffered on account of the mortgage. If the mortgagor is forced to pay a deficiency judgment, he can in turn recover the same from his grantee. Because of this continuous chain of indemnity it has been held that if the mortgagee acquires title to the property under and subject to his mortgage, he may not ordinarily recover the amount of the mortgage bond from the original mortgagor in view of the fact that the mortgagor has a right of indemnity against his grantee and the latter in turn against his grantee and so on down to the mortgagee. Eventually, then, the mortgagee would have to repay his grantor, and to prevent this it has been held that the

mortgagee under such circumstances cannot recover: Orient Building & Loan Assn. v. Freud, 298 Pa. 431.

Stanhope's Estate, supra, has been somewhat discredited in the decision in the case of Ryon's Estate, 318 Pa. 171, 174. We might add that there is some question as to the soundness of this theory of the chain of indemnity. Each grantee impliedly indemnifies against loss, not against liability: Fair Oaks B. & L. Assn. v. Kahler, 320 Pa. 245. A person or corporation in the chain from whom recovery cannot be had, either because it is no longer in existence, by death or dissolution, or because it is in or has gone through bankruptcy, would not be able to forge a link in the chain by indemnifying its immediate grantor and could not therefore bring any action against its grantee.

There is, however, a factual situation in which the chain of indemnity is broken and which suspends the operation of the rule as stated in Stanhope's Estate. Where title is taken by any of the intermediate grantees or even the mortgagee himself from the sheriff on a sale on a junior encumbrance, the grantee of the sheriff does not take under and subject to the mortgage and does not impliedly agree to indemnify anyone. Such was the case in Ryon's Estate. There decedent executed a first bond and mortgage to one Goldblatt and on the same day a second bond and mortgage to the Lifter Building & Loan Association. That organization subsequently became the owner by assignment of the first bond and mortgage. The property was the subject of a series of conveyances. After decedent's death, the association foreclosed on the second mortgage and took title from the sheriff by a deed which did not contain an "under and subject" clause. The evidence showed that there was no merger of the first mortgage with the title acquired at the foreclosure on the second mortgage. The court held that by the sheriff's sale the circle was broken and the association was entitled to assert its claim on the first mortgage against decedent's estate which, in turn, was subrogated under the mortgage for the amount it was required to pay.

The only factual difference between Ryon's Estate and the case now before us is that in the latter the mortgagee acquired title from the purchaser at the sheriff's sale on the second mortgage, whereas, in the former, the mortgagee owned both mortgages and bought in the title at the sheriff's sale under the second mortgage. This is a distinction without legal difference. Since plaintiff's grantor cannot suffer any loss under the decision in the case of Ryon's Estate, plaintiff cannot be called upon to indemnify and the circuity of action has been broken.

The theory of defendants' argument practically admits there was no merger of the mortgage and the fee. Merger is governed by the intention of the parties and the evidence conclusively establishes that there was no such intention. See Segreti, exec., v. Frisk et ux., 328 Pa. 82, First National Bank of Sunbury v. Rockefeller et al., 333 Pa. 553, and Pease v. Doane, 33 Pa. Superior Ct. 6.

We have also examined the assessment of damages and find it to be in proper order. Plaintiff has charged defendants with the original principal, with interest to the date that judgment was entered in April 1940, and with taxes and water rent paid by the society prior to the acquisition of title in 1932. The operation of the properties thereafter showed a net loss after deducting insurance, taxes, water rent, and maintenance.

There can be no question that plaintiff had a right to set off the amount of the judgments against the deposit of defendants in the society: Goldstein v. Jefferson Title & Trust Co., 95 Pa. Superior Ct. 167.

The rule to open the judgments therefore must be discharged, but it is incumbent upon plaintiff to assign the mortgages and convey the premises in accordance with the tender made by it on September 12, 1940.

*Order*

And now, to wit, June 30, 1941, defendants' rules to open judgments are discharged.